UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

        Plaintiff,

-against-

KYONGJA KANG,
a/k/a KYONG JA KANG,
WUN HEE KANG,
NISSIM YUSHUVAYEV, a/k/a "Nick,"
and HYUN GOO KANG,

        Defendants.
------------------------------------------------x

MEMORANDUM AND ORDER
04 CR 87 (ILG)

GLASSER, United States District Judge:

    Count One of a Superseding Indictment charges Kyongja Kang, Wun Hee Kang and Hyun Goo Kang with knowingly and intentionally holding and attempting to hold Jane Doe #1, to a condition of peonage which included aggravated sexual abuse and the attempt to commit aggravated sexual abuse in violation of 18 U.S.C. §§ 1581(a), 1294(a) and 2.

    Count Two charges the same offense, the alleged object of it being Jane Doe #2.

    Count Three charges Wun Hee Kang, Nissim Yushuvayev and Hyun Goo Kang with knowingly and intentionally obstructing and attempting to obstruct the enforcement of 18 U.S.C. § 1581(a) in violation of 18 U.S.C. §§ 1581(b) and 2.

    Count Four charges Kyongja Kang with the same offense charged in Count Three.

    In addition, the indictment alleges sentencing enhancing factors including other crimes; vulnerable victim injury; organizer and leader status; obstruction of justice; abuse of public trust.

Wun Hee Kang filed a motion in which Kyongja Kang and Yushuvayev joined seeking a variety of relief which will be discussed in the order in which the relief is sought.

I. <u>An Order Striking the Sentencing Enhancing Factor Alleged in Paragraphs 6 - 11.</u>

Those factors are obviously alleged in the wake of <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), in the eventuality that the Supreme Court will arrive at the same result as it did there regarding the federal Guidelines. The current state of the law in this Circuit as announced in <u>United States v. Mincey</u>, 380 F.3d 102 (2d Cir. 2004), is, that until the Supreme Court decrees otherwise, the federal sentencing Guidelines are still valid and to be applied here. In accordance with those Guidelines, enhancing sentencing factors can be determined by the Court by a fair preponderance of the evidence. Paragraphs 6 - 11 are, therefore, superfluous. In any event, this Court would direct that paragraphs 6 - 11 not be published to the jury for the reason that to do so would seriously impair the defendants' right to a fair trial. Should the awaited decision of the Supreme Court make it necessary or appropriate in the event of a conviction, those sentencing factors could thereafter be submitted to the jury with the needed instructions. This request for relief is, accordingly, granted and may be revisited should the Supreme Court decision in <u>Booker</u> and <u>FanFan</u> require it.

II. <u>An Order Directing the Government to Provide a Bill of Particulars Given the Uncertain Meaning of "Peonage."</u>

The function of a bill of particulars is to identify with specificity the crime with which the defendant is charged so that he can effectively prepare for trial, avoid surprise and be able to claim double jeopardy should he be prosecuted again for the same crime.

It is not the function of a bill of particulars to obtain a preview of, and to proscribe, the government's evidence before trial; to learn the legal theory upon which the government will proceed to prove its case or to assist the defendant's investigation. The cases teaching those bill of particular parameters also teach that if the information to which the defendant is rightfully entitled can be found in the indictment or in some other acceptable place, no bill of particulars need be furnished.

The defendants acknowledge that an indictment that sets forth the crime charged in the words of the statute generally preclude a request for a bill of particulars. They contend, however, that when the statute which they are charged with violating contains "generic terms," the general rule does not obtain. They contend that the words "peonage" and "conditions of peonage" contained in that statute are "generic" and deprive them of the "constitutionally adequate notice of the charge against which [they] must defend." Def. Mem. at 10.

The statute is 18 U.S.C. § 1581(a), (b), the relevant portions of which provide as follows:

> (a) Whoever holds or returns any person to a condition of peonage . . . shall be fined under this title or imprisoned not more than 20 years or both . . . . If the violation includes . . . aggravated sexual abuse or the attempt to commit aggravated sexual abuse, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.
>
> (b) Whoever obstruct, or attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be liable to the penalties prescribed in subsection (a).

The defendants contend that "peonage" and "conditions of peonage" are generic terms and "can exist by virtue of legal action, actual or threatened, or by virtue of

3

physical force actual or threatened . . . . He is left to guess whether he is accused of having used force or threats of legal action or both" and "require him, in effect, to guess what the accusation is that he must defend against." Def. Mem. at 13. The bill of particulars requested should then state with specificity the nature of the "peonage" charged.

A plain reading of the statute, § 1581(a), reveals that it is in two parts. The first makes it a crime to hold a person to a condition of peonage. The second part, enhances the punishment if the violation of the statute includes, among other things, aggravated sexual abuse or the attempt to commit aggravated sexual abuse. The act which is criminalized is the holding of a person to a "condition of peonage," which is punishable by fine or imprisonment up to 20 years, or both. If the crime is accompanied by the commission of or attempt to commit aggravated sexual assault, it is punishable by fine or imprisonment for any term of years or life, or both.

The question then is, whether "peonage" is understood to define a specific condition in which it is unlawful to hold another, or is it a generic term requiring explication. The answer to the question is found in Clyatt v. United States, 197 U.S. 207 (1905). The defendant there was charged with violating § 5526 Rev. Stat. 1901, (the predecessor of 18 U.S.C. § 1581), which provided in relevant part as follows:

> Every person who holds . . . returns . . . any person to a condition of peonage, shall be punished . . . .

The Court posed the question "what is peonage?" and wrote: "It may be defined as a status or condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness . . . . Peonage is sometimes classified as

voluntary or involuntary; but this implies simply a difference in the mode or origin, but none in the character of the servitude . . . . But peonage, however created, is compulsory service, — involuntary servitude . . . . That which is contemplated by the statute is compulsory service to secure the payment of a debt." 197 U.S. at 215, 216. The implication that peonage and involuntary servitude are synonymous has been noted in United States v. Shackney, 333 F.2d 475, 481 (2d Cir. 1964) (Friendly, J.) by the observation that "There is an initial puzzlement why the Criminal Code should contain two provisions, one relating to peonage, § 1581, and the other to involuntary servitude, § 1584, since any case that could be reached under the former section could also be reached under the latter. [FN9]" The footnote to that observation, it would seem, coupled with the holding in the case, suggests that the observation is inadvertently overbroad. n.9 reads: "Peonage involves the additional element that the involuntary servitude is tied to the discharge of an indebtedness. Clyatt v. United States, 197 U.S. 207 (1905)." In Shackney, Judge Friendly concluded that:

> A holding in involuntary servitude means to us action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement . . . not a situation where the servant knows he has a choice between continued service and freedom, even if the master has led him to believe that the choice may entail consequences that are exceedingly bad."

333 F.2d at 486.

The Court held, in fine, that the involuntary servitude statute, 18 U.S.C. § 1584, prohibits only "service compelled by law, by force or by the threat of continued confinement of some sort." 334 F.2d at 487. The "basal fact [of] indebtedness" identified in Clyatt and echoed in n.9 and inherent in peonage, prohibited by § 1581, is

5

not present in § 1584. The Second Circuit's understanding of "involuntary servitude" was confirmed by the Supreme Court in United States v. Kozminski, 487 U.S. 931, 948 (1988), where the Court held: "Thus, the language and legislative history of § 1584 both indicate that its reach should be limited to cases involving the compulsion of services by the use or threatened use of physical or legal coercion." The understanding of "involuntary servitude" as encompassing psychological coercion expressed by the Ninth Circuit in United States v. Mussry, 726 F.2d 1448 (9th Cir. 1984), was explicitly rejected.

The defendants' motion bottomed upon their view that the words "peonage" and "conditions of peonage" are essentially generic and thus require a bill of particulars to inform them with some degree of specificity of the crime with which they are charged, is belied by the foregoing discussion and is, therefore, denied.

In addition, the motion for a bill of particulars is denied for the reasons that it is not the function of a bill of particulars to acquire evidentiary detail, United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990), and the court's discretion to deny a request for one is not abused when the defendants are adequately informed of the charges against them by the indictment and by the discovery information already provided them. See Gov. Mem. at 12-14.

### III. The Motion to Dismiss Count Three Made by Wun Hee Kang, Kyongja Kang and Nissim Yushuvayev

Count Three charges the defendants with knowingly and intentionally obstructing, attempting to obstruct, and interfering with the enforcement of § 1581(a), in violation of § 1581(b), which provides:

6

> (b) Whoever obstructs, or attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be liable to the penalties prescribed in subsection (a).

Their motion is based upon the assertion that the defendants are not within the class covered by 1581(b), which, they claim includes only those in the military and civil service relying upon a recitation in United States v. Gasken, 320 U.S. 527, 529 (1944), of an Act of 1867 which a reading of n.8 on that page would readily have revealed had long since been repealed. There is no limitation on the persons embraced by § 1581(b) as the introductory word "whoever" couldn't make more plain.

Reliance by the defendants upon United States v. Kozminski, *supra*, and United States v. Shackney, *supra*, is misplaced. Those cases addressed prosecutions under § 1584 prohibiting involuntary servitude and not peonage, prohibited by § 1581 which these defendants are charged with violating.

The motion to dismiss Count Three is, therefore, denied.

IV. <u>Motion to Sever Count Four</u>

The defendant Hyun Goo Kang claims that joining him together with the other defendants runs afoul of Rule 8(b), Federal Rules of Criminal Procedure, which provides in relevant part:

> The indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense, or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Hyun Goo Kang is charged in three of the four counts. Count One charges him

together with Wun Hee Kang and Kyongja Kang with violating § 1581(a) with respect to Jane Doe #1; Count Two charges them with violating § 1581(a) with respect to Jane Doe #2; Count Three charges him together with Wun Hee Kang and Nissim Yushuvayev with violating § 1581(b).

Rule 8(b) has been construed to mean that joinder is proper where the criminal acts of two or more persons are "unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989). Applying the meaning of Rule 8(b) as understood by Attanasio to the counts of the indictment in which Hyun Goo Kang is charged, compels the conclusion that he has been properly joined and his motion on this ground is denied.

Hyun Goo Kang and Wun Hee Kang also move for a severance pursuant to Rule 14, Federal Rules of Criminal Procedure, which provides that "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trial, or provide any other relief that justice requires."

The arguments advanced for a severance by Wun Hee Kang in which Hyun Goo Kang joins are:

1. The anticipated motion for a severance by Yushuvayev, which has not been made and, therefore, need not detain us.

2. If Kang is tried together with Yushuvayev they may present mutually antagonistic defenses.

3. Spillover prejudice to Yushuvayev who is named only in Count Three alleging a violation of § 1581(b).

8

I have, on prior occasion, observed that the rules guiding the disposition of a severance motion have been recited too frequently and are, by now, too well known to require the citation of authorities to support them. They are: (1) persons indicted jointly should be tried jointly to conserve judicial resources, to avoid the unnecessary burden imposed upon citizens who are summoned to serve as jurors in separate trials, and avoid the necessity of witnesses being required to repeat their testimony in successive trials; (2) a defendant is not entitled to a severance because he would have a better chance of acquittal at a separate trial; (3) the presumption in favor of joint trials is particularly strong where the crimes involve a common scheme; (4) the admissibility of evidence against one defendant and not another does not require a severance; (5) a defendant requesting a severance bears the heavy burden of showing that he will be substantially prejudiced by a joint trial. United States v. Albunio, 1992 WL 281037, at * 3 (E.D.N.Y. Sept. 9, 1992).

Since 1993, the determination of severance motions have been informed by Zafiro v. United States, 506 U.S. 534 (1993). That case is, by now, so thoroughly familiar to all who labor in the thorny thicket of criminal law, that to recite its teachings at length would be superfluous. Suffice it to say that joint trials are favored in the federal courts and should be held unless "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. United States v. Bellomo, 263 F. Supp.2d 561, 578 (E.D.N.Y. 2003). The defendants have not shouldered the heavy burden that is theirs to bear that they will be substantially prejudiced by a joint trial or that the jury will be

9

unable to make a reliable judgment about the guilt or innocence of one of them, given what will be the Court's instructions to consider the evidence as it relates to each defendant separately.

As regards a claim of antagonistic defenses as buttressing Wun Hee Kang's request for severance, an unadorned claim to that effect is not enough. Even a simple showing of some antagonism between the defendants' theories would not require a severance. A defense reaches a level of antagonism that compels a severance of the defendant advancing it, if the jury, to believe the evidence offered on behalf of that defendant must necessarily disbelieve the evidence offered by his co-defendant. United States v. Turoff, 652 F. Supp. 707, 711 (E.D.N.Y. 1987), aff'd, 853 F. 2d 1037 (2d Cir. 1988). The Court's observation in this regard in Zafiro is worth noting. "Notwithstanding such assertions [of antagonistic defenses] the courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses. The low rate of reversals may reflect the inability of defendants to prove a risk of prejudice in most cases involving conflicting defenses." 506 U.S. at 538 (internal citations omitted). The defendants have proffered nothing to suggest a risk of prejudice. Their motion for a severance is, therefore, denied.



V. <u>Bifurcation of Forfeiture</u>

Wun Hee Kang's motion to bifurcate the forfeiture allegations from the other counts of the indictment is unopposed and is granted.

VI. <u>Disclosure of Witnesses</u>

Wun Hee Kang has moved this Court for an Order that would direct immediate

compliance by the government with <u>Brady v. Maryland</u> 373 U.S. 83 (1963). In its Memorandum in Response to the defendants' motion, the government writes that in a letter dated February 20, 2004, the defendants were advised that "the United States is unaware of any exculpatory material" and should it become aware of any it will comply with its <u>Brady</u> obligations.

Wun Hee Kang and Hyun Goo Kang also move this Court for an Order that would direct the government to immediately disclose (1) the names of all government witnesses; (2) all statements made by those witnesses; and (3) all impeachment material relevant to those witnesses.

The case most frequently cited in this Circuit regarding the pretrial disclosure of witnesses in non-capital cases is <u>United States v. Cannone</u>, 528 F.2d 296 (2d Cir. 1975), which held that the applicable standard is "whether a specific showing of need for disclosure by the defendant outweighs a specific showing of need for concealment by the government." See <u>United States v. Goldman</u>, 439 F. Supp. 337, 350 (S.D.N.Y. 1977). The balance in this case weighs heavily in favor of the government. Jane Doe #1 caused the arrest of Wun Hee Kang after reporting that he kicked her in the head. In response to that arrest, Jane Doe #1 was attempted to be kidnapped and forced to leave the country, conduct which formed the basis for Count Three of the indictment. Count Four charges Kyongja Kang with obstruction of justice which "necessarily involved a finding by a grand jury of probable cause that the crime had been committed," <u>Cannone</u>, 528 F2d at 302, and which was a significant factor in that case in the denial of the defendants' request for witness identification. In addition, the government represents

that its continuing investigation would be jeopardized by disclosure. Gov. Mem. at 33. See also United States v. Turkish, 458 F. Supp. 874, 881 (S.D.N.Y. 1978), in which the Court listed considerations in determining whether the names of witnesses should be given to the defendant. If those considerations were adopted here, the balance would again be struck in favor of the government. Accordingly, the motion for pretrial disclosure by the government of its witness list is denied.

The defendants' request for the pretrial disclosure of all witness statements is denied. 18 U.S.C. § 3500 does not require the disclosure of those statements until after the witness has testified and the Court has no authority to order such disclosure before then. See also Rule 26.2, Federal Rules of Criminal Procedure.

As concerns the defendants' request for pretrial disclosure of all impeachment material, this Court's view of that issue expressed in United States v. Shvarts, 90 F. Supp. 2d 219 (E.D.N.Y. 2000), was rejected in United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001), which held that "as long as a defendant possessed Brady evidence in time for its effective use, the government has not deprived the defendants due process of law simply because it did not produce the evidence sooner. There is no Brady violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result." It is, therefore, the responsibility of the prosecutor to determine when the point of "reasonable probability" will be reached. Coppa, 267 F.3d at 143 (citing Kyles v. Whitley, 514 U.S. 419, 437 (1995)). It follows that the motion for pretrial disclosure of impeachment material is denied. The risk that disclosure will be made in time for its effective use at trial is one that the government assumes.

VII.   Rule 404(b) Disclosure

Rule 404(b), Federal Rules of Evidence, requires the prosecution to "provide reasonable notice in advance of trial" of 404(b) evidence. The government is hereby directed to provide the defendants with the requisite notice one week prior to trial.

SO ORDERED.


Dated:      Brooklyn, New York
            December 22, 2004


                                          _____
                                          I. Leo Glasser

Copies of the foregoing Memorandum and Order were sent to:

Lee Freedman, Esq.
Assistant U.S. Attorney

Louis M. Freeman, Esq.
Freeman Nooter & Ginsberg
30 Vesey Street
New York, NY 10007

Oliver A. Smith, Esq.
75 Maiden Lane, Suite 231
New York, NY 10038

Frank Geoly, Esq.
8118 - 13th Avenue
Brooklyn, NY 11228